CLERK'S OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED
NOV 19 2008
JOHN F. CORCORAN, CLERK
BY: /s/ Tay Coleman
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION

| | |
|---|---|
| EDUCATIONAL CREDIT MANAGEMENT CORP., <br><br> *Appellant,* <br><br> v. <br><br> DIANE L. CROCKETT, <br><br> *Appellee.* | CIVIL NO. 6:08cv00031 <br><br> MEMORANDUM OPINION <br><br> JUDGE NORMAN K. MOON |

This case is before the Court on appeal from the judgment of the Bankruptcy Court for the Western District of Virginia dated July 21, 2008. The appellant, Educational Credit Management Corp. ("ECMC"), filed its notice of appeal and the record of the proceedings below on September 9, 2008. Oral arguments were heard on November 17, 2008, and the case is now ripe for decision. For the reasons that follow, I affirm the judgment of the Bankruptcy Court.

## I. BACKGROUND

The appellant, ECMC, is a creditor of the appellee, Ms. Crockett. Ms. Crockett took out a federally insured student loan of $8,500 in 1975.[1] On January 22, 1979, she filed for bankruptcy. Her case was converted from a Chapter XIII to a Chapter 7 bankruptcy in 1982. On June 28, 1983, the Bankruptcy Court issued a standard Discharge Bankrupt Order. That order discharged all of Ms. Crockett's debts and judgments, except those found to be non-dischargeable. In 2004, more than 20 years after the conclusion of Ms. Crockett's original bankruptcy proceeding, ECMC sent Ms. Crockett a letter seeking payment of the outstanding

---

[1] At present, with accumulated interest, the debt is now approximately $11,000. (Tr. Trans. at 31.)

loan.[2] In 2006, ECMC also began garnishing her wages. In response, Ms. Crockett moved to reopen her bankruptcy proceedings and filed an Adversary Proceeding on June 26, 2007.

Ms. Crockett argued that the student loan at issue was discharged by the Bankruptcy Court's 1983 Standard Order of Discharge. A trial was held before the Bankruptcy Court on April 24, 2008. In a judgment dated July 21, 2008, the Bankruptcy Court found for Ms. Crockett, and held that the student loan at issue was in fact discharged by the 1983 Discharge Bankrupt Order. ECMC now appeals that decision.

## II. STANDARD OF REVIEW

This Court reviews the Bankruptcy Court's "factual findings for clear error and its legal conclusions de novo." *Kielisch v. Educ. Credit Mgmt. Corp. (In re Kielisch)*, 258 F.3d 315, 319 (4th Cir. 2001). The facts as recited above are not disputed in this case; the only issue for consideration on appeal is a legal one. Therefore, the court reviews the legal conclusions of the Bankruptcy Court's decision de novo.

## III. DISCUSSION

The issue in this case is whether courts should give effect to a "gap" created by Congress, during which no law applied to exempt student loans from the discharge provisions of the bankruptcy laws. The gap is relevant in this case because Ms. Crockett filed her original bankruptcy action during the gap period, and the substantive law that existed on the date of that filing applies to this case. *University of Georgia v. Bonesteel (In re Bonesteel)*, Not Reported in b.R., 0080 WL 357910 (Bankr. E.D.Va. 1980); *see also United States v. Marxen*, 307 U.S. 200, 207 (1939) (holding that the "rights of creditors are fixed by the Bankruptcy Act as of the filing of the petition in bankruptcy").

---

[2] There is no statute of limitations to collect on student loans. 20 U.S.C. § 1091a(a)(1), § 1091a(a)(2)(B). Ms. Crockett does not attempt to raise that issue.

This gap was created when Congress attempted to move the provision making student loans non-dischargeable from the Higher Education Act to the bankruptcy code. The provision in the federal Higher Education Act, 20 U.S.C. §1087-3, made student loans authorized by that Act non-dischargeable during the first five years of the repayment period, except in cases involving undue hardship. The purpose of the legislation was to prevent abuse of the bankruptcy laws by students petitioning for bankruptcy shortly after graduation, without attempting to realize their potential increased earning capacity which their education provided. H.Rrep.No. 94-1232, 94th Cong., 2nd Sess., 1 (1976). On November 6, 1978, the Bankruptcy Reform Act ("BRA") expressly repealed §1087-3 as of that date.[3]

Section 523(a)(8) of the BRA again made student loans generally non-dischargeable. The effective date of § 523(a)(8) is governed by § 402 of the BRA, which declares that unless otherwise provided, the BRA takes effect on October 1, 1979. Sub-section 523(a)(8) is not among the exceptions to sub-section 402(a), and was therefore not effective until October 1, 1979. Thus, an 11-month gap existed between the repeal of §1087-3 on November 6, 1978 and the enactment of § 523(a)(8) on October 1, 1979, during which there was technically no law in effect to make student loans non-dischargeable. Congress subsequently acknowledged the gap through the enactment of The Technical Amendments Act, Pub. L. 95-56, 93 Stat. 387, on August 14, 1979. The Technical Amendments Act maintained the status quo of §1087-3 from August 14, 1979 until the October 1, 1979 effective date of §523(a)(8) of the BRA. The Technical Amendments Act shortened the gap, but did not eliminate it entirely.

No one disputes that the creation of the gap was unintended by Congress.[4] However,

---

[3] Sub-section 402(d) of the Reform Act expressly makes § 317 effective on November 6, 1978, thereby repealing 20 U.S.C. § 1087-3 at that time.

[4] *See* S. Rep. No.96-230, 96th Cong., 1st Sess., 2-3, reprinted in (1979) U.S. Code Cong. & Admin. News, pp. 937-938 ("The gap in coverage of a prohibition on the discharge in bankruptcy of loans made under the Guaranteed

-3-
Case 6:08-cv-00031-NKM    Document 8    Filed 11/19/08    Page 3 of 7    Pageid#: 106

since this issue arose, courts have disagreed on whether to read the statutes as they are written (as the Bankruptcy Court did in this case), or whether to give effect to the apparent intent of Congress by eliminating the gap. *See Univesrity of Louisville v. Kidwell (In re Kidwell),* 4 B.R. 685, 687 (Bankr. W.D.Ky. 1980) ("The critical question which has divided the courts is whether deference should be given to strict statutory construction or whether legislative intent should be judicially reconstituted to rectify an apparent statutory accident."). Thus, this case ultimately comes down to the identification of the appropriate rules of statutory construction, and how to apply those rules to this issue. The Fourth Circuit has not yet held directly on this issue.

In this case, the Bankruptcy Court held that, even though this gap was not intended by Congress, rules of statutory construction prevent the courts from glossing over the plain language of the statutes to give effect to Congressional intent. Judge Anderson noted that "[i]t is not disputed that Congress intended to repeal Section 1087-3 at the same time that it enacted Section 523. But that is not what Congress did. . . . It is not the province of this Court to divine the intent of Congress when the language of the relevant statutes is clear." (Judg. at 4-5, July 21, 2008.) Therefore, the Bankruptcy Court held that a gap in the statutory provisions did exist, and that because of this gap, Ms. Crockett's student loans were discharged along with her other debts in 1983. (*Id.* at 5.).

The Bankruptcy Court applied the "plain meaning" rule of statutory construction, which respects the principles of separation of powers so fundamental to our system of government. That rule of statutory construction mandates that when the meaning of the legislation is clear from the language of a statute, courts should follow the "plain meaning" of the statute. "The

---

Student Loan Program resulting from the early repeal of section 349A (sic) is very undesirable and totally inadvertent. . . . Congress obviously did not mean to create a gap and at all times held to the principle of nondischargeability of student loans."). *But see Freeman v. Regents of the University of Minnesota (In re Freeman),* 5 B.R. 24 (Bankr. Minn. 1980) (examining legislative history and concluding that it is uncertain whether creation of the gap was, in fact, unintentional).

starting point in every case involving construction of a statute is the language itself." *Watt v. Alaska*, 451 U.S. 259, 265 (1981). In such cases, a court should not look behind the plain meaning of the words to try to grasp at legislative intent, because to do so intrudes on the domain of Congress. *See Univesrity of Louisville v. Kidwell (In re Kidwell)*, 4 B.R. 685, 687 (Bankr. W.D.Ky. 1980) ("To judicially reconstruct [the statute] in contravention of its plain meaning is going too far. Congress produced the law, and it is the function of Congress to change it."); *University of Georgia v. Bonesteel (In re Bonesteel)*, Not Reported in B.R., 0080 WL 357910, *3 (Bankr. E.D.Va. 1980) ("The Court recognizes that this may well have been a legislative mistake but '[no] amount of judicial mental gymnastics can change the plain meaning of what Congress did, even though it was not what was intended.'" (*quoting Massachusetts Higher Education Assistance Corporation v. Sawaya (In re Sawaya)*, 2 B.R. 37, 39 (Bankr. Mass. 1979)).

Courts have similarly held that because Congress realized its mistake in creating the "gap," but failed to fix it entirely, courts should not revise the statute on their own. *E.g.*, *Bonesteel*, 0080 WL 357910 (Bankr. E.D.Va. 1980); *Sawaya*, 2 B.R. at 39, (refusing to give the Technical Amendments Act retroactive effect, because "[i]t seems likely that Congress, by recognizing the hiatus, made the determination to not interfere with any rights which the parties may have had, or which may have been judicially determined to exist between November 6, 1978 and August 14, 1979.").

However, other courts have reached the opposite result by holding that to ignore the intent of Congress for the sake of rigidly adhering to the plain language of the statutes is inappropriate in circumstances such as these, where the mistake is obvious and the real intent of Congress is clear. *E.g.*, *Conn. Student Loan Found. v. Williams (In re Williams)*, 9 B.R. 1004 (Bankr. E.D. Va. 1981) ("Under these compelling circumstances, it is evident that to apply

Section 317 of the Bankruptcy Code (which repealed Section 439A) and Section 402(d) (making Section 317 effective on November 6, 1978) strictly in accord with their literal meaning would pervert the manifest purpose of the statute by ignoring clear congressional intent in formulating this legislation. Certainly, 'even the most basic general principles of statutory construction must yield to clear contrary evidence of legislative intent.'" (*quoting National Railroad Passenger Corporation v. National Association of Railroad Passengers*, 414 U.S. 453, 458 (1974).)); *Wis. Higher Educ. Aids Bd. v. Lipke,* 630 F.2d 1225, 1230 (7th Cir. 1980) (holding that the statutes at issue "should not be applied strictly in accord with their literal meaning when to do so would pervert the manifest purpose of Congress.").

ECMC now urges this Court to judicially close the legislative "gap" that Congress created, either by holding that the repeal of § 1087-3 did not take effect until October 1, 1979, *see, e.g., Wis. Higher Educ. Aids Bd. v. Lipke,* 630 F.2d 1225, 1230-31 (7th Cir. 1980) ("Since the premature repeal of Section 439A by Section 317 of the Bankruptcy Reform Act was contrary to the intended purpose of Congress, we hold that Section 317 is ineffective with respect to proceedings like these commenced prior to the October 1, 1979, effective date of the Bankruptcy Reform Act when replacement Section 523(a)(8) became operative."); *N.Y. State Higher Educ. Servs. Corp. v. Adamo,* 619 F.2d 216, 222 (2d Cir. 1980), *cert. denied, sub nom Williams v. N.Y. State Higher Educ. Servs. Corp.*, 449 U.S. 843, 101 S.Ct. 125 (1980) ("We hold, therefore, that the premature repeal of section 1087-3 is of no effect with respect to proceedings commenced prior to the effective date of the BRA on October 1, 1979."); *Bd. of Reg. of the University System of Georgia v. Williamson (In re Williamson)*, 665 F.2d 683 (5th Cir. 1982); *Mass. Higher Educ. Assistance Corp. v. MacKay (In re MacKay)*, 7 B.R. 703 (Bankr. Mass. 1980); or by finding that the Technical Amendments Act is retroactive to the date of repeal of §

1087-3, *see, e.g., Conn. Student Loan Found. v. Southard (In re Southard)*, 2 B.R. 124, 127 (Bankr.W.D.Va. 1979) ("Congress, too, was well aware of the inadvertent "gap." But, on August 14, 1979, P.L. 96-56 was enacted, specifically closing any gap which may have been created."); *Conn. Student Loan Found. v. Williams (In re Williams)*, 9 B.R. 1004 (Bankr. E.D. Va. 1981) ("curative legislation is often presumed to operate retroactively in the absence of contrary intent" (*quoting Silverlight v. Huggins*, 488 F.2d 107, 108 (3d Cir. 1973)).

Recognizing that I am in the minority of courts that have held on this issue, I hold that Ms. Crockett's student loan was discharged by the standard discharge order entered in this case, because her petition for bankruptcy was filed during a period in which there was no law making student loans non-dischargeable. I find that there is no ambiguity in the statutory language creating the "gap" in the application of the non-dischargeability provisions for student loans. I further conclude that it is not the role of this Court to look behind those words to reach a result contrary to the plain meaning of the statute. Congress had the opportunity to close the gap when it enacted the Technical Amendments Act. Congress could have made that act retroactive, but it did not. I now decline to rewrite the statutes from the bench.

## IV. CONCLUSION

For the reasons stated herein, the Court affirms the decision of the Bankruptcy Court. An appropriate Order will follow.

The Clerk of the Court is hereby directed to send a certified copy of this Memorandum Opinion and the accompanying Order to all counsel of record

ENTERED: This 19th Day of November, 2008

NORMAN K. MOON
UNITED STATES DISTRICT JUDGE

-7-
Case 6:08-cv-00031-NKM   Document 8   Filed 11/19/08   Page 7 of 7   Pageid#: 110